# CHARLESTON.

## KIMMINS *v.* OLDHAM.

Submitted September 9, 1885.—Decided December 5, 1885.

1. The *seventh* clause of our statute of frauds—ch. 98 of Code—does not include an agreement, which is simply not *likely* to be performed, nor yet one, which is merely *expected* to be performed, within the space of a year ; but it does include any agreement, which by a fair and reasonable interpretation of the terms used

by the parties and in view of all the circumstances existing at the time does not admit of performance according to its language and intention within a year from the time of its making. (p. 262.)

2. It is well settled, that courts of equity will notwithstanding the statute of frauds enforce oral contracts for the sale of land which have been partially performed; and when the failure to complete the contract would operate as a fraud, *such courts* may exercise a similar jurisdiction with regard to chattels; but courts of law will not enforce such contracts contrary to the provisions of the statute. (p. 264.)

3. But it is a general rule, that where one has rendered services, paid a consideration, or sold and delivered goods in execution of an oral contract, which on account of the statute can not be enforced against the other party, such one can in a court of law recover the value of the services or of the goods upon a *quantum meruit* or *valebant*. (p. 265.)

4. This general rule, however, is limited and confined to cases, in which the services rendered, the goods delivered or consideration paid inured to the benefit of the defendant; and in such cases the recovery is not upon the contract but upon the *quantum meruit* or *valebant* or upon the money counts. (p. 265.)

5. A plaintiff and defendant with others borrow money for a corporation, of which they are stockholders, and give their negotiable notes therefor payable at four months, on which their names appear indifferently as makers and endorsers, upon the expectation, that the corporation will pay the money borrowed, and with the verbal agreement among themselves, that in case the corporation fails to pay the money, and any of them has it to pay or pays it, the others will refund to him their equal proportion of the sum paid; subsequently the notes thus given are consolidated into one note payable one year after date, upon which the plaintiff is maker and the defendant and others are endorsers; this note after its maturity is paid off by the plaintiff, and he brings his action against the defendant for his proportionate part of the money so paid by him, HELD:

I. That the making of the consolidated note operated not only as a renewal of the obligation to the creditor but impliedly as a renewal and continuance of the verbal agreement between the maker and endorsers modified so far only as to make it correspond with the date and terms of the new note;

II. The new note being by its terms incapable of performance within a year from its date; and the verbal agreement, being likewise incapable of performance within the year, it is inoperative and void under the statute of frauds;

III. The payment by the plaintiff inuring to the benefit of the corporation and not the defendant, the plaintiff is not entitled to recover for money paid from the defendant.   (p. 266.)

*Frame & Holt* for plaintiff in error.

*W. P. Hubbard* for defendant in error.

SNYDER, JUDGE:

Action of *assumpsit* brought March 13, 1884, in the circuit court of Ohio county by Andrew H. Kimmins against James H. Oldham.   The defendant pleaded *non-assumpsit* and the statute of limitations.   On the issues upon these pleas the case was tried by jury and a verdict found in favor of the plaintiff for $490.20, on which the court, February 5, 1885, entered judgment.   The defendant moved the court to set aside the verdict and grant him a new trial which motion being overruled the defendant excepted and brought the case before this Court by writ of error.

During the trial several bills of exceptions were taken by the plaintiff in error, in one of which all the evidence is certified.   The declaration consists of the common counts only and was accompanied by a bill of particulars in these words
" JAMES H. OLDHAM,

*To Andrew H Kimmins,*        DR.

March 26, 1882.—To cash paid for you to William Bailey, $612.50, being one fourth of the principal, interest and costs paid by me to William Bailey in satisfaction of a loan for $1,645.86 made by said Bailey to you, F. M. Henderson, James Orr and myself, and evidenced by a note dated November 12, 1875, for $1,645.86, at one year, held by said Bailey, which note was made by me and endorsed by you, F. M. Henderson and James Orr, upon an agreement that you, F. M. Henderson, James Orr and myself should be jointly liable therefor, upon which note you, F. M. Henderson and James Orr waived protest, demand and notice."

The facts of the case as disclosed by the evidence, so far as it is material to state them, are as follows :

The Roney's Point and West Union Turnpike Company was incorporated by an act of the Legislature of this State in 1870, ch. 70, Acts 1870, p. 75.   The plaintiff, the defendant,

James Orr and F. M. Henderson became stockholders in, and menbers of the finance committee of, said company. While the building and construction of said turnpike was in progress, the company became pressed for money to pay the contractors who were making the road by reason of the delay and neglect of some of the stockholders to pay their subscriptions promptly.   In order to satisfy and pay the contractors and to gain time to collect the money from delinquent stockholders or persons who had subscribed for the building of the road, the four persons mentioned, that is the plaintiff, the defendant, Orr and Henderson in the years 1871 and 1872, borrowed money for the purpose aforesaid from William Bailey through his agent, Forbes, and gave their personal notes therefor, Forbes being unwilling to loan on the notes of the company.   Some of the notes thus given were signed by one of the parties as maker and some by others, but all of them were negotiable and signed by one or the other as maker and endorsed by all the others.   Neither one wishing to make himself liable further than the others, they made a parol agreement among themselves that, regardless of the relation they might occupy upon the notes, they were to be equally liable in the event the notes were not paid by the company.   These notes were all payable at four and six months from date.   Subsequently, three of these notes, one for $525.00, one for $547.56 and one for $598.00, all dated in 1871 and 1872, were consolidated and merged into the note of November 12, 1875, mentioned in the plaintiff's bill of particulars.   The defendant's name appeared on the last of said three notes as an endorser but it did not appear in any manner on either of the two other notes.   The evidence tended to prove that the parties made the said note of November 12, 1875, upon the same agreement as to their joint liability, that existed among them as to the original notes, but the defendant was not present when said note was made, he signed it as endorser a few days afterwards.   The plaintiff on March 26, 1882, gave his note to Bailey for $2,450.00 in satisfaction of the said note of November 12, 1875, and its interest, and soon after paid the said note of $2,450.00.   The said note of November 12, 1875, has upon it a waiver of notice of protest signed by all the parties.   The note is in these words:

" WHEELING, W. VA., Nov. 12th, 1875.

"One year after date, I promise to pay to the order of F. M. Henderson, sixteen hundred and forty-five dollars and eighty-six cents, value received, negotiable and payable at the Exchange Bank of Wheeling, with interest from date."

$1,645.86.                                    A. H. KIMMINS.

Eendorsed.—F. M. HENDERSON,
          JAMES H. OLDHAM,
          JAMES ORR."

The plaintiff bases his right of action upon the fact that he paid off and satisfied this note and the verbal agreement aforesaid that the parties should contribute an equal portion to the payment thereof in the event, the Turnpike Company or its stockholders failed to pay it.   The defendant to defeat any recovery against him relies upon the *seventh* clause of the statute of frauds which is as follows :

"No action shall be brought in any of the following cases : * * * * * *Seventhly.*—Upon any agreement that is not to be performed within a year ; unless the * * agreement, * * * or some memorandum or note thereof be in writing and signed by the party to be charged thereby or his agent."   Ch. 98, Code p. 535.

Brown on the Statute of Frauds, sec. 273, in reference to the words "*to be performed*" used in the statute, says :  "The result seems to be that the statute does not mean to include an agreement which is simply not *likely* to be performed, nor yet one which is simply not *expected* to be performed within the space of a year from the making ; but that it means to include any agreement which by a fair and reasonable interpretation of the terms used by the parties, and in view of all the circumstances existing at the time, does not admit of performance according to its language and intention, within a year from the time of its making."

There are many nice distinctions drawn in the decided cases as to what particular agreements or contracts should be included or excluded from the operation of the statute which it is not necessary to notice in this case.   It will be sufficient for our present purposes to quote portions of secs. 78 and 79 of the same author in which he says :   " An agreement, in general terms, to do a particular act, no time being specified, and

the act being such as may be performed by the party promising, *under the contract*, within a year, is saved from the operation of the statute.   *   *   *   It is very clear that it is immaterial, upon the question of the application of the statute to a contract, that it has or has not been performed within the year.  *   *   * The statute finding the parties perfectly free to make a certain contract without a writing, provides simply that if that contract does by its terms, expressed, or, from the situation of the parties, reasonably implied, *require* more than a year for its performance, they must put it in writing.   In other words, it must *affirmatively* appear from the contract itself and all the circumstances that enter into the interpretation of it, that it can not in law be performed within the space of a year from the making." *McPherson* v. *Cox*, 96 U. S. 404; *Walker* v. *Johnson, Id.* 424; *Lawrence* v. *Cook*, 56 Me. 187.

In *Lower* v. *Winters*, 7 Cow. 263, the contract was made in January of one year to pay a sum of money in March of the next year.   In regard to this contract the court in its opinion says: " This certainly is a contract not to be performed within a year.   The terms are clear and explicit.   It depended on no contingency.   It was not in the power of the defendant to perform before the 1st of March.   A tender before that time would not have been good.   The plaintiff would not have been bound to accept payment before that day.   It seems to me to come within the terms of the statute and the adjudications upon it."—Citing several cases.

Thus it would seem equally clear that the case before us comes within the terms of the statute.   The contract here was payable "one year after date." It can not rightly be said that a contract which requires money to be paid one year after date, can by its terms require such payment within one year, nor can it be fairly and reasonably implied that such was the intention or expectation of the parties.   The promissor was not bound to pay, and the payee could not be required to accept the money until after the expiration of the year.   Neither party could have required the other to perform or accept a performance within the year.   The whole year by the express terms of the contract must expire before there could be a performance of it in law.   The parol agree-

ment sued on by the plaintiff, being dependent upon the performance of this written contract and necessarily therefore incapable of performance within the year, comes clearly within the statute and is void.

It is insisted, however, for the defendant in error, that he having performed the contract on his part such performance removes the case from the operation of the statute. The following cases are cited in support of this claim : *Hendrick* v. *Hern,* 4 W. Va. 626; *Lowry* v. *Buffington,* 6 *Id.* 255; and *Tracy* v. *Tracy,* 14 *Id.* 243. These are all cases involving the specific execution of parol contracts for the sale of land in courts of equity, and the principles therein considered have no application to actions in courts of law. It is well settled both in England and this country that courts of equity will enforce oral contracts for the sale of land which have been partially performed; and when the failure to complete them would operate as a fraud *such courts* may exercise a similar jurisdiction with regard to chattels. But in neither of such cases has a court of law ever attempted to enforce such contracts. *Marcy* v. *Marcy,* 9 Allen 8; *Young* v. *Drake,* 1 Seld. 463; *Sabey* v. *Brisbee,* 20 Iowa 105.

It is further contended for the defendant in error, that the performance on his part, that is, the payment of the debt to Bailey, entitles him to recover " the amount paid by him on the ground of the failure of the consideration which was to have moved from the defendant."

I am not certain that I fully comprehend this position of the counsel for the defendant in error. But I infer from what is said in his brief immediately following it, that it is intended to advance the proposition, that no one can accept or receive the benefit of an act done at his request and then refuse to make compensation on the ground that the contract is invalidated by the statute. This as a legal proposition is well sustained by the authorities. *Gray* v. *Hill,* R & M. 420; *Paine* v. *Paine,* 28 Vt. 34; *Wilson* v. *Roy,* 13 Ind. 1; *Bashford* v. *Pearson,* 9 Allen 387.

In *Towsley* v. *Moore,* 30 Ohio St. 185, it was decided that, "Although an action cannot be maintained upon a verbal contract not to be performed within one year, yet when such contract has been fully performed by one party, *the other hav-*

*ing obtained its benefits*, he cannot refuse to pay the reasonable value thereof." As authority for this doctrine the court refers to Brown on Stat. Frauds, sec. 117, where it is said: "When, in pursuance of a verbal contract, a conveyance or lease of land is executed, or goods are sold and delivered, an action may be maintained for the breach of the promise to pay the price or of any of the other stipulations of the contract; provided, of course, that they be not such stipulations as the statute requires to be in writing." The same author says: "One who has rendered services in execution of a verbal contract, which, on account of the statute, cannot be enforced against the other party, can recover the value of the services upon a *quantum meruit.*" 3 Pars. on Contr. 38.

This doctrine, however, is not by any means universal in its application, but both in reason and upon authority it is limited and confined to cases in which the goods delivered, consideration paid, or services rendered, inured to the benefit of the defendants. *Emery* v. *Smith*, 46 N. H. 157; *Marcy* v. *Marcy*, 9 Allen 8; *Peter* v. *Compton*, 1 Smith Lead Car. (Am. Notes) 587.

Accordingly it was decided in *Pierce* v. *Paine*, 28 Vt. 34, "If the agreement, for the non-performance of which an action is brought, was not to be performed within a year, no recovery can be had upon it, although that which formed the consideration of the agreement was to have been, and was paid or performed within that period; and no recovery can be had for or upon the consideration so paid or performed, *unless it inured to the benefit of the defendant.*"

Redfield, chief justice, delivering the opinion of the court in this case, says: "If the contract had been performed on one side, in such manner that the performance goes to the benefit of the other party, whether this was done within the year or not, it undoubtedly lays the foundation of a recovery against the party benefited by such performance. But when the contract, on the part of this party, was not to be performed within one year from the time it was made, the recovery is not upon the contract, but upon the *quantum meruit* or *valebant*, or upon the money counts. It is a recovery back of the consideration of the contract upon which no action will lie, and which has been repudiated by the other party."

34

This doctrine seems to me to be quite reasonable and it is supported by the best considered authorities. In addition to the cases before cited, see *Souch* v. *Strawbridge*, 2 C. B. 808 ; *Cabot* v. *Haskins*, 3 Pick. 83 ; *Lockwood* v. *Barnes*, 3 Hill 128 ; *Boardwell* v. *Getman*, 2 Denio 87 ; *Lane* v. *Shackford*, 5 N. H. 133 ; *Bashford* v. *Pearson*, 9 Allen 387 ; *Railroad* v. *Sherman*, 31 Vt. 182.

The case at bar comes fairly within the rule just stated and excludes the plaintiff from any recovery. The entire benefit of the payment made by the plaintiff to Baily inured to the benefit of the turnpike company and not to the defendant. Under this rule of law, if the plaintiff has any right to recover, it is not upon the parol agreement, but upon the implied promise to repay money which was paid for the use of the defendant. The money, as the evidence in this case shows, having been paid for the use of the turnpike company and not for the defendant, no such promise can be implied. But if such promise could be implied, it would simply be a promise to answer for the debt of another, and would be void under the *fourth* clause of the statute of frauds.

But it is still further contended that the liability of the defendant rests upon the agreement between the parties made in 1871 or 1872, anterior to the giving of the note of November 12, 1875, which contained no stipulation that the money then borrowed should not be paid within one year. This position is not made clear by the evidence. But assuming that such is the fact, the case of the plaintiff is not improved. The giving of the note of November 12, 1875, was a full discharge and satisfaction of the preceding notes and necessarily put an end to all agreements and obligations arising out of them not only as between the creditor and debtors but as among the debtors themselves. If then, according to this claim, the verbal agreement at first made between the makers and endorsers of the original notes can not be regarded as part of the agreement upon which the plaintiff signed the note of November 12, 1875, as maker and the defendant as endorser, then that note operated as a payment by the plaintiff of the money borrowed from Bailey. If so, the right of the plaintiff to recover from the defendant on their oral agreement accrued at that time and became barred

by the statute of limitations before this action was commenced.

I think, however, the true interpretation of the whole transaction is, that the making of the note of November 12, 1875, with the original parol agreement resting upon the minds of the parties thereto, operated as renewal of the obligation to Bailey with a necessarily implied renewal of the oral agreement between the makers and endorsers modified so as to make it correspond with the date and terms of the new note. *Easterby* v. *Barber*, 66 N. Y. 433. This view is not only consistent with all the evidence in the case, but is the only one which accords with the claim of the plaintiff as set forth in his bill of particulars.

In no view, therefore, it seems to me, was the plaintiff's demand sustained by the evidence; and for the reasons stated, I am of opinion that the circuit court erred in overruling the defendant's motion for a new trial. The judgment of said court is therefore reversed, the verdict of the jury set aside, and the case remanded.

REVERSED.   REMANDED.