E. W. JONES *v.* T. J. SHIPLEY

(No. 8955)

Submitted January 30, 1940. Decided February 13, 1940.

*Peyton, Winters & Hereford,* for plaintiff in error.
*Okey P. Keadle,* for defendant in error.

Kenna, Judge:

E. W. Jones brought notice of motion against T. J. Shipley in the Circuit Court of Cabell County, and to an order setting aside a verdict returned in his favor, this writ was granted upon petition of the plaintiff below. The order setting aside the verdict states the court's reason to be that the terms of the contract upon which notice is based, in view of the circumstances surrounding the parties at the time it was entered into, disclose that it does not admit of performance within one year from its date, and therefore, the contract is obnoxious to the statute of frauds. Plaintiff assigns the entry of that order as error. The defendant assigns four grounds of cross-error as further justification for the setting aside of the verdict, three of which relate either to the rejection or admission of testimony, and the fourth to the fact that the amount of the verdict included $898.59 of interest upon the amount allegedly due, which the nature of plaintiff's claim did not justify.

The notice of motion sets up a verbal contract for a monthly salary, itemized statement of which accompanying the notice covers the years 1932 to 1938, inclusive, and in addition thereto, commissions earned upon sales in 1936 and 1937, totaling $2,065.05, of which $970.00 had been paid, the entire sum allegedly due Jones being $5,618.37. Shipley appeared and filed his counter-affidavit and a plea of the general issue. A great deal of detailed testimony was taken, including book entries of the business concern in which Jones was employed by Shipley primarily as the single bookkeeper. The plaintiff and the defendant were the principal witnesses, and, since their testimony conflicted in a great many material aspects, the following resume will resolve the conflicting elements in favor of Jones for the reason that the jury so found. *Coleman* v. *N. & W. Ry. Co.,* 100 W. Va. 679, 131 S. E. 563; *Wiseman* v. *Ryan,* 116 W. Va. 525, 182 S. E. 670.

In 1923, Shipley went into business conducted in the name of Huntington Motor Truck Company on Third Avenue in the City of Huntington. The purpose was at that

time to represent the International Harvester Company in the sale of motor trucks in that territory. The business did very well, and in 1929, Shipley employed Jones, Shipley being at that time engaged also in the contracting business as a builder of roads and artificial lakes, and interested in a company engaged in each. When Jones was first employed, he received a salary of forty dollars a week, but in 1932, he was reduced to thirty-five dollars a week. In that year, the Huntington Motor Truck Company was not prosperous and on the basis of the outlay was losing money. It had five men employed in the shop, one salesman, a parts man, and Jones in the office. Shipley told Jones that it would be necessary to lay off three of the five men in the shop. At Jones' suggestion, instead of following that course, by oral agreement between Shipley and the others concerned, the shop work was equally divided with the understanding that the otherwise net receipts would be proportionately divided among the men in the shop and Jones, and the difference between what they actually received and their pay in effect at that time would be carried on the company's books as a balance to be paid to them when Shipley had discharged his indebtedness for road equipment he was then paying for, or when the business of the truck company revived to the extent of justifying the payment or when Shipley was able to pay back to the truck company $15,000.00 that he had taken from its treasury in order to supply capital for one of his contracting concerns. Jones agreed that the arrangement should apply to him and that he would take a salary reduction of five dollars a week, entitling him to a thirty-five dollar salary.

The books of the company were in Shipley's custody and kept by Jones in Shipley's office at the garage, where Shipley transacted the office work of his two contracting concerns. The garage occupied two lots, one of which was owned by Mrs. Shipley and the other by Shipley himself. The truck company paid $250.00 a month rental, which was paid regularly after the year 1932 by using payments made to the truck company by Wood & Shipley upon the

$15,000.00 indebtedness owed by that contracting company to the truck company. Jones entered upon the weekly payroll of the company, with the knowledge and understanding of Shipley, the amount of salary that he had been accustomed to receive, as well as the amount he actually got, the latter amount varying between ten and twenty-five dollars weekly. The weekly payroll apparently was not posted in any daily journal kept for the truck company, but was entered by Jones merely upon its general ledger. The defendant objected to the admission of the weekly payroll sheet for that reason, but we believe that the uncontradicted statement of Jones that the entries were made with the knowledge and approval of Shipley, the single defendant in this proceeding, renders them admissible.

The defendant withdrew from the Huntington Motor Truck Company during the years 1932 to 1937, inclusive, a little over $30,000.00. That sum included $3,000.00 that was paid yearly as rental for the building the company occupied, and for the years 1932 to 1934, inclusive, a salary paid to Shipley. It did not include the unpaid price of the purchases of the two contracting companies (Wood & Shipley Company and Tri-State Construction Company) in which Shipley was interested, Shipley's attitude being that nobody had a right to demand payment of these accounts but himself, he being the sole owner of the truck company.

We have made no attempt to state the defendant's contention based upon conflicting testimony, but we think we have accurately stated the principle contentions of the plaintiff, substantiated by the plaintiff's testimony.

Viewed in retrospect, we believe that the contract between Shipley and Jones turned out to be impossible of performance within one year. However, we do not think that that is the controlling element under the statute when properly applied. True, the surrounding circumstances of the parties are to be taken into consideration in construing a contract for the purpose of determining whether it is possible of performance within one year or is not,

but this rule is confined to the circumstances of the parties at the time the contract was entered into and does not relate to circumstances which arose during the performance of the contract. *Kimmins* v. *Oldham,* 27 W. Va. 258. The existence of any one of three circumstances arising subsequent to the making of the contract could render Shipley liable for the difference between the established salaries and the remuneration actually paid. If any of these conditions could transpire within a year, no matter how unlikely that occurrence appeared to be when the contract was entered into, the contract would be possible of performance within a year, and therefore, the statute of frauds inapplicable. *Reckley* v. *Zenn,* 74 W. Va. 43, 81 S. E. 565; *McClanahan* v. *Otto-Marmet, etc., Co.,* 74 W. Va. 543, 82 S. E. 752; *Rua* v. *Bowyer, etc., Co.,* 84 W. Va. 47, 99 S.·E. 213. A single example suffices to illustrate the possibility of Shipley's contended liability being fixed within twelve months from the date of the contract, and that is the improvement in business conditions and the earnings of Huntington Motor Truck Company. It is obvious that that company's earnings could possibly have improved to such an extent as to justify the salary payments without jeopardizing the company financially. This need not have been within the contemplation of the parties to the contract, nor their expectation, but so long as it, at the time of the contract's formation, was possible, the contract does not fall within the statute. Without going into detail, we believe the same reasoning applies to both of the other conditions as well.

For the foregoing reasons we are of the opinion that the trial court erred in setting aside the verdict of the jury for the reason that the contract came within the statute of frauds.

It will be noted that the notice alleges that Jones' contract was an oral contract, and that the statute of frauds was not specially pleaded, but the question was permitted to be raised under the general issue by the defendant's motion to strike, made both at the conclusion of the plaintiff's proof and when the case was ready to go to the jury.

The method of presenting the statute of frauds as a defense has not been raised in this proceeding, and consequently we do not wish to do more than call attention to the existence of some confusion in the West Virginia decided cases. We have cases holding generally that the statute of frauds may be taken advantage of under the general issue, regardless of allegations in the notice or declaration, *Howell* v. *Harvey,* 65 W. Va. 310, 64 S. E. 249, 22 L. R. A. (N. S.) 1077; *McClanahan* v. *Otto-Marmet, etc., Co.,* 74 W. Va. 543, 82 S. E. 752, and that it may be taken advantage of on demurrer where the allegations permit that to be done, *Collins* v. *Philadelphia Oil Co.,* 97 W. Va. 464, 125 S. E. 223, and that it must be specially pleaded. *Ruckman* v. *Hay,* 92 W. Va. 97, 114 S. E. 514. Where the declaration or notice does not show the nature of the contract involved, logically the statute of frauds does constitute a matter of defense at that stage in the proceeding, so that it is only after the introduction of the plaintiff's proof that the issue develops or arises. Under these circumstances, the plaintiff may be permitted to raise the question under the general issue. But where the allegations show the nature of the contract by means of which the defendant in this aspect is fully informed, we think that the right of a litigant to be informed as to the nature of the controversy requires a special plea when the statute of frauds is depended upon. It will, of course, be remembered that the statute of frauds does not go to the validity of the plaintiff's contract, but reaches only the question of its enforcibility. And furthermore, the statute of frauds cannot be taken advantage of in a collateral proceeding. *Burruss* v. *Hines,* 94 Va. 413, 26 S. E. 875. See also, *The F. & M. Ins. Co.* v. *Morrison,* 11 Leigh 354, 36 Am. Dec. 385. This particular section of the statute of frauds applies only to the bringing of an action based upon contract and while, under our cases, it is not required, we are impressed that when plaintiff's initial pleading alleges an oral contract the most orderly way of presenting the question in the record is by means of a special plea in the nature of a plea by way of confession and avoidance. Otherwise, the

purpose of the statute to prevent fraud and deceit may be thwarted by means of the statute.

The cross-assignments of error that relate to the admission and rejection of testimony we do not believe are well taken. As to the bookkeeping entries, all of them with the exception of those made concerning Jones' commission on trucks sold, were made in the usual and ordinary method followed in the motor truck company's course of business. They were made upon books in Shipley's custody and subject to his inspection, and he does not contradict the statement that they met with his approval nor does he question their accuracy. As to the three exhibits bearing upon the commissions which Jones claims that he earned in selling trucks, although the entries were not made until some little time after the transactions were completed, Jones' testimony is that the entries were based upon written memoranda made at the time. We think the exhibits can reasonably be viewed as memoranda for the purpose of refreshing Jones' recollection, for, independently of the bookkeeping entries, Jones testified in detail concerning the three transactions involved and Shipley did not question the accuracy of his figures or the stated amounts, although he did deny that Jones was entitled to the claimed commissions. The bookkeeping entries do not relate to the only controverted question involved in proving or disproving the sales commissions, but only details of those transactions that are not disputed. Therefore, even though their admission might have constituted a technical error, we cannot perceive any way in which it could have been prejudicial.

The trial court would not permit one of the other employees to testify concerning his own understanding with Shipley in connection with his own wages, and in the avowal the witness stated that Jones was not present when he discussed that question with Shipley and that the witness did not know what arrangement had been made between Jones and Shipley. We simply make this statement to show that the matter has been considered,

for we are of opinion that there can be no question of the correctness of the trial court's ruling.

We are of the opinion that the question advanced by the defendant in error concerning the amount of $898.59 included in the verdict as interest upon the amount of salary now found to be due and unpaid is well taken. Jones testified that his claim included interest upon the amount he considered due him at the end of each year, beginning in 1932. The total for each year was arrived at and the amount of interest calculated upon it until the time Jones instituted this proceeding. In the present showing of this record, there is no specific date that could be maintained as the time the salary payments became due and payable by Shipley to Jones, and there does not seem to have been any effort to establish any specified date for that purpose. The oral contract did not deal with the question of interest. So that there is no basis from the present record that justifies the inclusion of interest in the amount of the verdict. The plaintiff below should be given his option of remitting $898.59 from the amount of the verdict.

The question of the sufficiency of the notice has not been raised, and yet a casual reading seems to show plainly that it does not mention nor include the commission on trucks sold by Jones, although the account accompanying the notice sets the three items out so far as dates and amounts are concerned. The case was tried as though the commissions were understood to be a part of plaintiff's claim. Under the circumstances, we believe that the plaintiff should be accorded leave to amend his notice of motion. *Long* v. *Pocahontas, etc., Company,* 83 W. Va. 380, 98 S. E. 289. See also, *Aliff* v. *Atlas Assurance Company, Ltd.,* 102 W. Va. 638, 135 S. E. 903.

The order of the Circuit Court of Cabell County setting aside the verdict is reversed, and the case remanded with direction to permit the plaintiff below to amend his notice of motion, accord the plaintiff the right to take an additional remittitur for $898.59 and if he does, to enter judgment in his favor upon the verdict of the jury so amended,

but if the plaintiff declines to take the additional remit-titur, to set aside the verdict and award a new trial.

The defendant below having substantially prevailed, he is awarded costs.

*Reversed with directions.*